Exhibit 1

### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| OFFSHORE EQUIPMENT LLC, | § | |
| | § | |
| Consolidated Plaintiff, | § | |
| | § | Case No. 4:19-cv-04317 |
| v. | § | |
| | § | Admiralty Rule 9(h) |
| HEAVY LIFT VB-10,000, *in rem*, her | § | (Consolidated Action) |
| Engines Tackle and apparel, et al., | § | |
| VERSABAR, INC., VERSAMARINE LLC, | § | |
| And VERSABUILD, LLC, | § | |
| | § | |
| Consolidated Defendants. | § | |

### CONSOLIDATED PLAINTIFF OFFSHORE EQUIPMENT LLC'S SURREPLY IN FURTHER SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Offshore Equipment LLC ("Offshore" or "Plaintiff"), respectfully submits this surreply in further support of its Opposition to Defendants' Motion for Partial Summary Judgement dated September 25, 2020, (Dkt. # 73) ("'Defendants' Motion"), and for the limited purpose of responding to Defendants' objection in reply to certain exhibits and testimony submitted in support of Offshores opposition.  *See* Dkt. # 78, at 1.

### I. INTRODUCTION

In its Motion Defendants argue that Offshore's claim for storage and mooring fees for the CECIL PROVINE incurred after the Incident[1] are not recoverable in a maritime allision case, as a matter of law.  See Dkt. # 73 at 1, and 4.  In opposition, Offshore points out that there is no bright line rule under maritime law that excludes storage and mooring fees in allision cases, even in the

---

[1] The "Incident" refers to the allision between the VB-10,000 and the *CECIL PROVINE* in the Sabine River on May 10, 2019.  *See* Dkt. 76 at 2

total constructive context.  Dkt. # 76 ("Offshore's Opp."), at 5 – 8.  Maritime courts can and do award damages in addition to the fair market value of the vessel for costs and expenditures directly resulting from the an allision that were reasonable, unavoidable, and necessary.  *Id.*  Whether Offshore's claims for storage and mooring fees are compensable damages turns a number of genuine disputes of facts that are material to determining whether those costs directly resulted from the allision and were reasonable, unavoidable, and necessary (or stated differently, whether the costs are consequential in nature).  *Id*. at 8 – 17.  These material facts include:

- The Cecil Provine was seaworthy and capable of being moved from the Brawley Yard prior to the Incident;

- It was intended that the *CECIL PROVINE*, which was moved to the Brawley Yard just two weeks before the allision, was only intended to stay at the Brawley Yard for a limited amount of time to perform work to convert the rig from a MODU to a MOPU and prepare it for sale;

- The Incident caused extensive damage to the *CECIL PROVINE* rendering it unseaworthy, unsafe, and incapable of being moved without substantial repairs;

- After the allision, the *CECIL PROVINE* required significant temporary repairs in order to be moved safely from the Brawley Yard, and in order to be moved without becoming a risk and danger to navigation;

- Offshore does not have the financial means to pay for the temporary repairs necessary to remove the rig from the Brawly Yard.

*See Id.*, at 3-5.

To support these assertions Offshore cited to particular parts of materials in the record, including documents, the declaration of Joshua Greenburg (the sole owner of Offshore), and Mr. Greenburg's deposition testimony.  *See* Declaration of F. Robert Denig dated October 15, 2020 (Dkt. # 77), Exs. 1 – 11 (Dkt. ## 77-1 – 77-11).  In reply, Defendants do not directly address or contest these assertions of fact or argue that these facts are not material  Rather, Defendants merely object to the admissibility of certain of the exhibits and some of the deposition testimony Offshore

relies on in support of its opposition. Dkt. # 78 at 1. Specifically, Defendants object to Denig Exhibit numbers 5, 8, 9, and 10, and further "Defendants also assert the objections stated in Mr. Greenberg's deposition." *Id*.

Little effort went into Defendants' objection. Defendants do not support their objection with any legal argument, case law support, or reference to any specific rules, except a passing reference to Fed. R. Civ. P. Ruel 801. But this is not surprising. Defendant objections are unfounded and baseless, and are inappropriately stated. The evidence presented by Offshore in support of its opposition is admissible or otherwise can be presented in admissible form at trial. Accordingly, the Court can and should consider that evidence when determining Defendants' Motion.

## II. ARGUMENT

Summary judgment is only appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(a); *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). A party asserting that a fact is genuinely in dispute must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations … ." Fed. R. Civ. P. Rule 56(c)(1)(A). In its opposition, Offshore asserts genuine disputes of material facts, and supports those assertions by citing to materials in the record, including deposition testimony and documents.

Defendants' do not state any legal basis for objecting to materials presented by Offshore. Offshore notes, however, that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. Rule 56(c)(2). Except for a passing reference to hearsay, Defendants do not explain why the materials

3

Offshore cited are inadmissible or otherwise cannot be presented in a form that would be admissible in evidence.

Prior to the 2010 amendments Rule 56 had required that documents relied on by a party in support of or in opposition to summary judgement be authenticated by and attached to an affidavit. These requirement, however, were omitted from the amended version of the rule that is in effect today. The 2010 amendments simply added "documents" to the list of materials that may support a party's assertions in opposition to summary judgment. *See* Rule 56(c)(1)(A), advisory committee's notes (2010 Amendments) ("Subdivision (c)(4) carries forward some of the provision of former subdivision (e)(1). Other provision are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record"). "Thus, although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial." 10A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2722 (4th ed.).

This principle was explained succinctly by the Fifth Circuit when vacating a summary judgment decision in a maritime action because the district court improperly dismissed unsworn statements of the vessel captain offered in opposition without considering whether the statements could be admissible if presented as testimony at trial:

> Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ..., the material may be presented in a form that would not, in itself, be admissible at trial. 11 Moore's Federal Practice–Civil ¶ 56.91 (2017); *see also Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (holding that a "proponent need only 'explain the admissible form that is anticipated' " (quoting Fed. R. Civ. P. 56, advisory committee's note to 2010 amendment)); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015)

4

(recognizing that a "court may consider ... the content or substance of otherwise inadmissible materials where the 'the party submitting the evidence show[s] that it will be possible to put the information ... into an admissible form.' " (alteration in original) (quoting 11 James Wm. Moore et al., Moore's Federal Practice–Civil ¶ 56.91[2] (3d ed. 2015))); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (determining that a district court may consider a statement "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted)).

Thus, the rule expressly contemplates that affidavits are only one way to "support" a fact; "documents ... declarations, [and] other materials" are also supportive of facts. Fed. R. Civ. P. 56(c)(1)(A). To avoid the use of materials that lack authenticity or violate other evidentiary rules, the new rule allows a party to object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence." Fed. R. Civ. P. 56(c)(2); *see also* advisory committee's note to 2010 amendment ("The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible.

*Lee v. Offshore Logistical and Transport, LLC*, 859 F.3d 353 (5th Cir. 2017). Offshore submits that all of the materials that Defendants' now object to can and will be presented in an admissible from at trial, and thus should not be dismissed and should be considered by the Court.

### A. Defendants Objection to Documents as Hearsay

Defendants object to Denig Exhibits 5, 8, 9, and 10 as hearsay. Defendants do not provide any argument or analysis to support this objection. A closer inspection of these materials, however, demonstrate that they either are not hearsay at all, or are documents containing statements by Mr. Greenburg that can be admitted into evidence and can be authenticated by Mr. Greenburg at trial.

1.   *Exhibit 5 (Dkt. # 77-5) – Declaration of Joshua Greenberg dated May 13, 2020.*

This declaration was relied on in opposition to Defendants' motion to support the assertions that the original closing date for the sale of the CECIL PROVINE to EPCM was extended on several occasions, and that in April of 2019 EPCM and Offshore agreed to a closing date of May

5

#80023597_v1

13, 2019.  Greenberg Decl., ¶¶ 4 – 6 (Dkt. # 77-5).  Mr. Greenberg further attached to the declaration documents in support of his testimony including (1) a summary of the purchase and sale agreement with EPCM for the purchase of the CECIL PROVINE, and (2) text messages between Mr. Greenberg and representatives of EPCM containing Mr. Greenburg's statements with respect to the closing date of the sale.  *Id*.  These are matters to which Mr. Greenberg has direct personal knowledge, and to which he testified to in his declaration signed under penalty of perjury. Greenburg Decl., at ¶ 2 ("This declaration is based on my personal knowledge of the events that took place before the May 10, 2019 allision …")

Accordingly, the Greenberg Declaration and the testimony and documents offered therein are admissible in its current form, and in any event can be presented in an admissible form at trial.

> 2. *Exhibit 8 (Dkt. # 77-8) email exchange between Offshore and EPCM discussing the MOPU conversion work on the CECIL PROVINE dated April 6, 2019.*

This document is relied on by Offshore to support the assertion that Offshore reached a service agreement with EPMC in April 2019 to perform works related to the conversion the *CECIL PROVINE* to MOPU at the Brawley Yard prior to the Incident.  Dkt. # 76 at 3.  This assertion is further supported by Mr. Greenburg's deposition testimony (Dkt. # 77 – 6) (Greenberg Deposition Tr. pp. 44 (ln. 1) – 45 (ln. 19); 273 (ln. 10) – 275 (ln. 25)), and paragraphs 4 – 5, and 7 of the Greenburg Declaration (Dkt. # 77 – 5).

Exhibit 8 (Dkt. # 77-8) corroborates that testimony in the form of an email from representative of EPCM to Mr. Greenburg requesting certain works to be performed on the *CECIL PROVINE* and confirming that EPCM offered to pay for that work.  The email was received by Mr. Greenburg, and as such can be authenticated by Mr. Greenburg at trial.  Furthermore, the assertions in the email itself are within Mr. Greenburg's personal knowledge, and are consistent

#80023597_v1

with his sworn testimony and with his direct communications and negotiations with EPCM – which matters Mr. Greenburg has personal knowledge of and can testify to at trial.

    3.    *Exhibit 9 (Dkt. 77- 9) – text messages between Mr. Greenburg and Joe Cain, owner of Brawley LLC and the Brawley Yard (also referred to as the Beacon Yard)*

This document is cited in support of Offshore's assertion that the *CECIL PROVINE* was moved to the Brawley Yard on April 26, 2019 (just two weeks before the Incident) to perform some of the MOPU conversion work. Dkt. # 76 at 3. This assertion is mainly supported by Mr. Greenburg's deposition testimony (Dkt. # 77- 6) (Greenberg Deposition Tr. pp. 151 (ln 10) – 152 (ln. 20); 162 (ln. 14) – 165 (ln. 18)), and paragraph 9 – 10 of the Greenburg Declaration (Dkt. # 77 – 5). The text messages include statements from Mr. Greenburg made on April 24, 2019 confirming that the *CECIL PROVINE* would be going to the Brawley Yard in the next couple of days. These are Mr. Greenburg's own statements, and they can be authenticated and supported by his testimony at trial.

    4.    *Exhibit 10 (Dkt. # 77-10) email from Mr. Greenburg to EPCM representatives regarding mooring and storage of the CECIL PROVINE at the Brawly Yard*

This document is cited by Offshore in support of the assertion that the pre-Incident mooring arrangement with Brawley for the storage and mooring of the *CECIL PROVINE* was only for a period of a few months (until September 2019) and that the *CECIL PROVINE* would have been removed from the property by that time once the sale to EPCM closed and the MOPU conversion was completed. Dkt. # 76 at 3. The email includes a statement from Mr. Greenburg: "Mooring fees monthly, 5 months until September 30th." Dkt. # 77-10. This is Mr. Greenburg's direct statement, and concern matters to which Mr. Greenburg has direct personal knowledge. Accordingly, this email can be authenticated by Mr. Greenburg, and the assertion of fact can and will be presented at trial in an admissible form by Mr. Greenburg's direct testimony.

B.  **Defendants' Objection to Mr. Greenburg's Deposition Testimony**

Offshore cites to Mr. Greenburg's deposition testimony to support in whole or in part several assertions of fact, including:

- Two weeks prior to the Incident the CP was seaworthy, capable of being moved and transported, and was moved to the Brawley Yard in order to perform some of the MOPU conversion work (Greenburg Deposition Tr. pp. 151 (ln. 10) – 152 (ln. 20); 162 (ln. 14) – 165 (ln. 18));

- The allison caused major structural damage to the CP including gashes in the hull, detachment of the heliport, the disabling of the jacking system, and the destruction of lifeboats (*Id*. at pp. 283 (ln. 17) – 285 (ln. 10)); and

- Offshore did not have the financial means to perform the substantial post allison temporary repairs needed in order to safely move the CP off the Brawley Yard and towing it a distance for scrapping at some other lcoation (*Id*. at p. 220 (ln. 14 – 22)).

Dkt. # 76 at 2 – 5.  Inspection of these portions of the transcript reveal  that Defendants' counsel, Mr. Orlando, did not assert any objections during the deposition with respect to any of this testimony.

Offshore further relies on Greenberg Deposition Tr. pp. 44 (ln. 1) – 45 (ln. 19); 273 (ln. 10) – 275 (ln. 25)) to further support the assertion that Offshore reached a service agreement with EPCM in April 2019 to perform works related to the conversion of the *CECIL PROVINE* to a MOPU.  Dkt. # 76 at 3.  In all of that cited testimony, Mr. Orlando asserted just a single objection related to the following testimony only:

> Mr. Orlando:  But you, meaning Offshore Equipment, had no contract with EPCM to convert [the CECIL PROVINE], right?
> …
> Mr. Greenberg:  I had the verbal understanding with EPCM to use our equipment, which is our 4100 ringer, to lift all of the equipment to assist, I think it was Beacon Maritime.  Russel Covington had the – was going to be doing all of the conversion.
>
> And he had the relationship with EPCM to do all that type of work.  I facilitated the Cecil Provine to be used and to have the right to become and be converted to a MOPU.

8

    Mr. Orland:    Object to responsiveness.

*Id.* at p. 45 (ln. 8 – 21).

    Mr. Orlando's objection to responsiveness, however, is unfounded and is not sustainable. Mr. Greenberg's testimony was a direct response to the question: Offshore had no contract with EPCM to convert the *CECIL PROVINE*, right? Mr. Greenburg's answer was that Offshore had a verbal agreement with EPCM to use Offshore's equipment to lift equipment and to assist with the conversion work. Mr. Orlando may not have liked that answer, but it was a direct answer to his question.

    Accordingly, all of deposition testimony relied on by Offshore in its opposition should be considered by the Court.

## **CONCLUSION**

    Defendants have not stated any viable objection to the materials cited by Offshore in support of its assertions in opposition to Defendants' Motion. Accordingly, Defendants' objection should be denied and the Court should consider all of those materials when considering Offshore's opposition. For all of the reasons stated herein, and stated in Offshore's Opposition (Dkt. # 76) Defendants' Motion for partial summary judgment should be denied.

Dated: October, 30, 2020

    Respectfully Submitted,

    */s/ James H. Power*
    James H. Power
    State Bar no. 24026397
    Federal I.D. No. 433050
    F. Robert Denig
    *Pro Hac Vice*
    HOLLAND & KNIGHT LLP
    1100 Louisiana Street Suite 4300
    Houston, Tx 77002

-and-

31 West 52nd Street
New York, NY 10019
Telephone: 212-513-3494
Email: james.power@hklaw.com
Email: robert.denig@hklaw.com

*Attorneys for Plaintiff Offshore Equipment LLC*

*Of Counsel*
Gregg S. Garrison
Texas State Bar no. 00787520
GARRISON LAW CORPORATION
1221 State Street Suite 12 #91510
Santa Barbara, California 93101-2699
Phone: 650-726-111
Facimile: 805-669-3168
Email: gsgarrison@garrisonlawcorp.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document has been served to all counsel of record vie the CM/ECF and by electronic mail to:

Michael A. Orlando
Texas Bar No. 15302700
Fed. Id. No. 1814
Meyer Orlando LLC
13201 Northwest Freeway, Suite 119
Houston, Tx. 77040
morlando@meyerorlando.com
*Attorneys for defendants Heavy Lift VB-10,000,*
*Versabar, Inc. Versamarine, LLC and Versabuild, LLC*

 /s/ *James H. Power*
James H. Power
